IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICKEY RAY TAYLOR, JR.,

      Plaintiff,

v.                                          1:20-cv-00536-DHU-JMR

TREY THOMPSON, SERGEANT
CASTANEDA, CORPORAL COX,
SERGEANT GRIFFIN, SERGEANT
RICHARD, DIVISION CAPTAIN DOE,
CITY OF CARLSBAD, CARLSBAD
MEDICAL CENTER, DOCTOR KELLY
GLENN, and DOCTOR CAMILLE DOAN,

      Defendants.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on defendants Dr. Kelly Glenn's and Dr.

Camille Doan's Motion to Dismiss. Doc. 201. Plaintiff Mickey Ray Taylor, Jr. filed a response.

Doc. 222. Dr. Glenn and Dr. Doan filed a reply. Doc. 227. In his response, Mr. Taylor

incorporates his response to the Carlsbad Medical Center's Motion for Summary Judgment (Doc.

220), which made similar arguments. Doc. 222 at 3. The Honorable District Judge David H.

Urias referred this case to me pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct

hearings, if warranted, and to perform any legal analysis required to recommend to the Court an

ultimate disposition of this case. Doc. 60. Having reviewed the parties' submissions and the

relevant law, I recommend that the Court GRANT Dr. Glenn's and Dr. Doan's Motion to

Dismiss (Doc. 201) and dismiss the claims against them with prejudice.

## I.    Background

Plaintiff Mickey Ray Taylor, Jr. is an incarcerated, *pro se* litigant. *See* Doc. 109. On June

3, 2020, Mr. Taylor initiated this lawsuit against two unnamed law enforcement officers and the

City of Carlsbad, New Mexico. Doc. 1. Litigation in this case has been extensive. *See* Docs. 1–253. On August 11, 2023, Mr. Taylor filed a motion to amend his complaint, significantly expanding his claims. *See* Doc. 109. As the motion was unopposed, the Court granted Mr. Taylor permission to amend his complaint on September 20, 2023.[1] Doc. 116. His amended complaint added, in relevant part, Dr. Glenn and Dr. Doan as defendants.[2] *See* Doc. 109 at 5–7.

On February 3, 2019, Mr. Taylor was involved in an altercation with several Carlsbad law enforcement officers. Doc. 109 at 2–10. He was arrested. *Id.* at 5–7. Upon arrest, the officers took Mr. Taylor to Carlsbad Medical Center, a hospital, for medical treatment. *Id.* at 5–6. Mr. Taylor alleges that he was grievously injured by his altercations with the Carlsbad officers. Doc. 109 at 5–7. At the Carlsbad Medical Center, Mr. Taylor was treated by both Dr. Glenn and Dr. Doan. *Id.*

The factual circumstances and merits of Mr. Taylor's excessive force claims will be addressed in a forthcoming order on the City Defendants' Motion for Summary Judgment. *See* Doc. 205.

## II.  Mr. Taylor's Operative Complaint

Mr. Taylor asserts two claims against the doctors in his second amended complaint. Doc. 109 at 5–7 (Claim Four and Claim Six). In Claim Four, Mr. Taylor asserts a claim for:

> Conspiracy/Civil Conspiracy to violate my fourth amendment and due process
> rights under the U.S. Constitution or to cover up official misconduct that clearly

---

[1] Mr. Taylor argues that because the Court granted his unopposed motion to amend, the Court already determined that his claims against the doctors are viable. Doc. 222 at 3. That is incorrect.

[2] Dr. Glenn and Dr. Doan were initially named as "John Doe receiving doctor" and "John Doe releasing doctor if not same as receiving." Doc. 109 at 1. After reviewing his own medical records, Mr. Taylor identified Dr. Glenn and Dr. Doan as the John Doe doctors. *See* Doc. 133 at 2.

violates my rights, fraudulent concealment, medical malpractice gatekeeper liability, deliberate indifference to medical needs under 42 U.S.C. § 1983.

Doc. 109 at 5.[3] In Claim Six, Mr. Taylor asserts a:

Stand alone claim aside from the conspiracy involvement of the Carlsbad Medical Center Hospital and the one (or two) doctor(s) violation of my right to due process under 42 U.S.C. § 1983's deliberate indifference to my known medical needs, fraudulent concealment to cover up conspiracy and official misconduct, medical malpractice in association with, the receiving doctors liability looking forward to provide additional care, the releasing doctor's gatekeeper liability to obviously known medical care needs now looking back.

*Id.* at 7.

In support of these claims, Mr. Taylor alleges that the defendant officers "knowingly conspired to attempt to covertly kill" him. *Id.* at 5. Mr. Taylor states that he was "tased to death" while handcuffed on the way to the hospital. *Id.* at 7. Mr. Taylor further alleges,

[The officers'] murder conspiracy machine extends to the local hospital, who, seen my death, wrist burn, my res[]uscitation without giving me proper treatment as I was immediately released full-well knowing I needed more treatment after cardiac arrest and death long enough to soil my clothes but not quite long enough to give me brain damage deprived of oxygen for however long. Hospital and receiving doctor and or releasing doctor if it's not one in the same person, is liable for its-their association with the local police force and Trey Thompson and Cox for clearly providing-establishing its-their showing of actual deliberate indifference to my known medical needs that even any layman or even a child or an incompetent could see and know that I needed for more treatment.

*Id.* at 5–6. In other words, Mr. Taylor alleges that Dr. Glenn and Dr. Doan denied him appropriate medical treatment and knowingly released him to "murderous police officer[s]." *Id.* at 7.

Mr. Taylor's two claims against the doctors overlap significantly. Reading the complaint liberally, I find that Mr. Taylor alleges three causes of action against Dr. Glenn and Dr. Doan:

---

[3] When quoting Mr. Taylor, I do not correct or note any grammar, syntax, or spelling errors to avoid inadvertently changing Mr. Taylor's meaning.

(1) medical malpractice, (2) civil conspiracy, and (3) deprivation of his civil rights under 42

U.S.C. § 1983. Mr. Taylor's § 1983 cause of action encompasses all of his alleged constitutional

violations, including a Fourth Amendment violation, due process violation, and deliberate

indifference to his medical needs, which is a reference to the legal standard for certain Eighth

Amendment violations.

### III.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for

"failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all

well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to

the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir.

2013). A complaint fails to state a claim on which relief may be granted when it lacks factual

allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). In other words, a complaint must include

enough facts to state a claim to relief that is plausible on its face. *Id.* at 555–56. The allegations

must be sufficient to establish that, if true, "the plaintiff plausibly (not just speculatively) has a

claim for relief." *Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir.

2009) (quotation marks and citation omitted).

The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as

true) to suggest" that he or she is entitled to relief. *Twombly*, 550 U.S. at 556. Bare legal

conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by

factual allegations" to state a claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

While the Court must construe a *pro se* plaintiff's complaint broadly under this standard, the generous construction given to the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (1991). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*; *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997). Courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney*, 113 F.3d at 1173–74. Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## IV.   Discussion

Mr. Taylor asserts three causes of action against Dr. Glenn and Dr. Doan: (1) medical malpractice, (2) civil conspiracy, and (3) deprivation of civil rights under 42 U.S.C. § 1983. *See supra* Section II. As to the first cause of action, the doctors move to dismiss the medical malpractice claims because the statute of limitations has lapsed. Doc. 201 at 4–5. As to the second cause of action, the doctors move to dismiss the civil conspiracy claims because Mr. Taylor fails to state a claim on which relief can be granted. *Id.* at 5–6. I agree with the doctors as to both causes of action. Although the doctors do not mention the § 1983 claims, Mr. Taylor

plainly fails to state a § 1983 claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). As such, I recommend that the Court dismiss all of Mr. Taylor's claims against the doctors.

> ### A.   Mr. Taylor's medical malpractice claims are barred by the statute of limitations.

The doctors argue that Mr. Taylor's medical malpractice claims are barred by the statute of limitations. Doc. 201 at 4–5. In response, Mr. Taylor argues that his claims relate back to the original and first amended complaints. Doc. 222 at 1; Doc. 220 at 2. Alternatively, Mr. Taylor argues that the statute of limitations is tolled because of fraudulent concealment. Doc. 222 at 1; Doc. 220 at 3. I agree with the doctors that Mr. Taylor's medical malpractice claims are untimely. The claims do not relate back, and the limitations period was not tolled by fraudulent concealment.

Under New Mexico law, the statute of limitation for a medical malpractice claim is three years "after the date that the act of malpractice occurred." N.M. Stat. Ann. § 41-5-13. The doctors assert without explanation that the statute of limitation for "nonqualified health care providers," which is the same as a personal injury action, is applicable to them. *See* Doc. 201 at 4–5 (citing N.M. Stat. Ann. § 37-1-8). Under N.M. Stat. Ann. § 37-1-8, the statute of limitations for personal injury actions is three years from "when a physically objective and ascertainable injury to the plaintiff occurs." *See Roberts v. Sw. Cmty. Health Services*, 1992-NMSC-042, ¶ 19–20, 114 N.M. 248, 254, 897 P.2d 442, 448 (holding that "[s]ection 41-5-13, does not apply to [nonqualified] health care providers"). The doctors do not explain why they would be considered "nonqualified healthcare providers," not covered by the New Mexico Medical Malpractice Act. *See* N.M. Stat. Ann. § 41-5-5(A) (outlining the qualifications for healthcare providers under the Medical Malpractice Act). Regardless, the difference is immaterial as the statute of limitations is

6

three years under either statute. *See also* Doc. 220 at 2 (Mr. Taylor conceding that the applicable

statute of limitations is three years).

In some circumstances, an amended complaint can "relate back" to the date the original

complaint was filed. FED. R. CIV. P. 15(c).[4] For an amended complaint to relate back, the

amended claim must have "arose out of the conduct, transaction, or occurrence set forth or

attempted to be set forth in the original pleading." FED. R. CIV. P. 15(c)(1)(B). Further, Rule

15(c)(1)(C) requires that,

> the party to be brought in by amendment:
>
> (i)     received such notice of the action that it will not be prejudiced in defending
>         on the merits; and
> (ii)    knew or should have known that the action would have been brought against
>         it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1)(C).

Under New Mexico common law, "fraudulent concealment of a cause of action by the

defendant will toll the statute of limitations." *Estate of Brice v. Toyota Motor Corp.*, 2016-

NMSC-018, ¶ 8, 373 P.3d 977. In *Kern*, the New Mexico Supreme Court explained,

> where a party against whom a cause of action accrues prevents the one entitled to
> bring the cause from obtaining knowledge thereof by fraudulent concealment, or
> where the cause is known to the injuring party, but is of such character as to conceal
> itself from the injured party, the statutory limitation on the time for bringing the

---

[4] When a federal court is applying state law, there is some confusion as to whether federal or
state rules for relation back apply. *See, e.g.*, *Dale K. Barker Co. v. Valley Plaza*, 541 F. App'x
810, 814 (10th Cir. 2013) (unpublished) (citation and quotation omitted) ("there may be
considerable uncertainty whether a federal court sitting in diversity jurisdiction is free to apply
the relation-back principle embodied in Rule 15(c) instead of a conflicting state rule on the
subject,"); *Lamenda v. Bd. of Cnty. Comm'r for Cnty. of Taos*, No. Civ. 18-0163 KBM/SCY,
2019 WL 2371714, at *3 (D.N.M. June 5, 2019). Here, the distinction between state and federal
law is immaterial. As the rules apply to Mr. Taylor's case, Federal Rule of Civil Procedure 15(c)
and New Mexico Rule 1-015(C) use the same standards. *But see Lamenda*, 2019 WL 2371714, at
*4 (noting a difference between Rule 15(c) and Rule 1-015(C) that is not relevant here).

action will not begin to run until the right of action is discovered, or, by the exercise
of ordinary diligence, could have been discovered.

*Kern by and through Kern v. St. Joseph Hosp., Inc.*, 1985-NMSC-031, ¶ 11, 102 N.M. 452, 459

697 P.2d 135, 142 (citation omitted). To toll the statute of limitations under fraudulent

concealment, plaintiff must show:

> (1) that the physician knew of the alleged wrongful act and concealed it from the
> patient or had material information pertinent to its discovery which he failed to
> disclose *and* (2) that the patient did not know, or could not have known through the
> exercise of reasonable diligence, of his cause of action within the statutory period.

*Id.* at ¶ 12.

Here, Mr. Taylor's medical malpractice claims are barred by the statute of limitations.

Mr. Taylor alleges that the doctors' malpractice occurred on February 3, 2019.[5] Doc. 109 at 5.

Therefore, the statute of limitations for his medical malpractice claims expired three years later,

on February 3, 2022. *See* N.M. Stat. Ann. §§ 37-1-8, 41-5-13. Mr. Taylor moved to amend his

complaint, adding the claim against the doctors, on August 11, 2023. Doc. 109; *see also Snow v.*

*Warren Power & Machinery*, 2015-NMSC-026, ¶ 33, 354 P.3d 1285, 1292 (amended complaint

is deemed filed, for statute of limitations purposes, on the date plaintiff filed the motion to

amend). As such, plaintiff's medical malpractice claims were a year and a half late.

Mr. Taylor's medical malpractice claims do not relate back to his original complaint. *See*

FED. R. CIV. P. 15(c). The doctors argue, and I agree, that "there is no suggestion, that Plaintiff's

---

[5] Regardless of which statutory limitation period is applied, the trigger date is the same here. Mr.
Taylor does not dispute that his injuries were "physically objective and ascertainable" on
February 3, 2019, the same date the "act of malpractice occurred." *Compare* N.M. Stat. Ann. §
41-5-13 (trigger date for Medical Malpractice Act statute of limitations is when "the act of
malpractice occurred"), *with* N.M. Stat. Ann. § 37-1-8 (trigger date for personal injury statute of
limitations is when "when a physically objective and ascertainable injury to the plaintiff
occurs").

claims against the [doctors] relate to the same transaction or occurrence as the original Complaint." Doc. 227 at 3 (referencing Fed. R. Civ. P. 15(c)(1)(B)). The original complaint in this action was an excessive force claim against law enforcement officers and the City of Carlsbad. Doc. 1 (filed June 3, 2020). The original complaint did not mention any of Mr. Taylor's treating physicians or any alleged medical malpractice. *See id.* Further, Dr. Glenn and Dr. Doan did not receive "notice of the action" prior to being served with the second amended complaint. *See* Fed. R. Civ. P. 15(c)(1)(C)(i). Nor is there any indication that Dr. Glenn and Dr. Doan "knew or should have known that the action would have been brought against," them. *See* Fed. R. Civ. P. 15(c)(1)(C)(ii). Therefore, Mr. Taylor's medical malpractice claims do not relate back to his original complaint.

Mr. Taylor's medical malpractice claims also do not relate back to his first amended complaint. *See* Fed. R. Civ. P. 15(c). Mr. Taylor's first amended complaint added defendant "Artesia General Hospital, Doctors Nurses Staff Generally" as a defendant. Doc. 20 (filed May 27, 2021). The Court dismissed the "Artesia General Hospital, Doctors Nurses Staff Generally" from this suit because Mr. Taylor failed to state a cognizable claim against them and there is no such hospital in Carlsbad, New Mexico. Doc. 22 (filed August 20, 2021). In the order, the Court stated plaintiff "may seek leave to amend his claims against [Artesia General Hospital, Doctors Nurses Staff Generally] within a reasonable time." *Id.* at 3–4. Mr. Taylor did not do so until August 11, 2023, almost two years later—and a year and half after the limitations period lapsed. *See* Doc. 109. Assuming that Mr. Taylor intended to name Dr. Glenn and Dr. Doan in his first amended complaint, the doctors still did not receive "notice of the action" prior to being served with the second amended complaint. *See* Fed. R. Civ. P. 15(c)(1)(C)(i). Nor is there any

indication that the doctors "knew or should have known that the action would have been brought against." *See* FED. R. CIV. P. 15(c)(1)(C)(ii). As such, Mr. Taylor's claims against the doctors do not relate back to the first amended complaint.

Finally, the statute of limitations is not tolled by fraudulent concealment. *See Brice*, 2016-NMSC-018, ¶ 8. While Mr. Taylor raises fraudulent concealment, he does not assert that he recently discovered the alleged conspiracy between the doctors and law enforcement. *See Kern*, 1985-NMSC-031, ¶ 12. Nor does this Court have reason to believe this information was recently discovered. Mr. Taylor also does not assert that the doctors knew of any "alleged wrongful act and concealed it from the patient." *See id.* On the contrary, he alleges that the doctors knew that the law enforcement officers were dangerous and knew that he needed more medical treatment. Doc. 109 at 5–7. Neither of these presumed facts were hidden from Mr. Taylor on February 3, 2019, or throughout the statutory period. *See Kern*, 1985-NMSC-031, ¶ 12. As the doctors' point out, "[p]laintiff alleges no facts to support a fraudulent concealment claim." Doc. 227 at 4. Mr. Taylor fails to establish that the statute of limitations for his claims against the doctors should be tolled because of fraudulent concealment.

Because the complaint does not relate back and the statute of limitations was not tolled, Mr. Taylor's medical malpractice claims are time barred. Therefore, I recommend that the Court dismiss the medical malpractice claims against Dr. Glenn and Dr. Doan.[6]

---

[6] Dr. Glenn and Dr. Doan also allege that Mr. Taylor fails to state a substantive medical malpractice claim against them. Doc. 201 at 5. Because I find that any medical malpractice claim is time barred, I do not address the argument.

**B.**     **Mr. Taylor fails to state a civil conspiracy claim against the doctors.**

Mr. Taylor accuses Dr. Glenn and Dr. Doan of conspiring with law enforcement to hide the alleged abuse he endured at the hands of officers. Doc. 109 at 5–7. The doctors argue that Mr. Taylor fails to sufficiently state a civil conspiracy claim. Doc. 201 at 5–6. I agree with the doctors.

In New Mexico, the elements of a civil conspiracy claim are "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." *Ettenson v. Burke*, 2001-NMCA-003, ¶ 12, 130 N.M. 67, 73, 17 P.3d 440, 446 (quotation and citation omitted). "A civil conspiracy must actually involve an independent, unlawful act that causes harm—something that would give rise to a civil action on its own." *Id.*

Here, Mr. Taylor fails to sufficiently state a civil conspiracy claim against the doctors. *See Twombly*, 550 U.S. at 556.

Mr. Taylor does satisfy the first element of a civil conspiracy by alleging that there is a conspiracy between the doctors and law enforcement officers. Doc. 109 at 5–7; *see also Ettenson*, 2001-NMCA-003, ¶ 12.

As to the second element of a civil conspiracy claim, however, Mr. Taylor fails to allege "that specific wrongful acts were carried out by the defendants." *Ettenson*, 2001-NMCA-003, ¶ 12. The doctors argue, and I agree, that Mr. Taylor "fails to identify any specific wrongful acts carried out by the Moving Defendants." Doc. 201 at 6. Reading the complaint liberally, Mr. Taylor alleges that the doctors should not have released him to the officers given his physical state. *See* Doc. 109 at 5–6 ("[The officers'] murder conspiracy machine extends to the local

11

hospital, who, seen my death, wrist burn, my res[]uscitation without giving me proper treatment as I was immediately released full-well knowing I needed more treatment after cardiac arrest and death."). Paradoxically, Mr. Taylor says that he appreciates the doctors for "saving my life and all." *Id.* at 6. He also admits to having a "mental haze and amnesia" regarding the events at the hospital. Doc. 222 at 3. Accepting as true that Mr. Taylor "needed more treatment," he was discharged to a jail, which had an independent duty to provide plaintiff with medical care. *See* N.M. Stat. Ann. § 33-3-5. The doctors releasing a stable patient to another healthcare provider is not "an independent, unlawful act . . . that would give rise to a civil action on its own." *Ettenson*, 2001-NMCA-003, ¶ 12. To the extent such an action was malpractice, that claim is barred by the statute of limitations. *See supra* Section IV.A. No other wrongful act is ascertainable from the complaint. At best, Mr. Taylor's complaint infers "the mere possibility of misconduct," which is insufficient to survive a motion to dismiss. *See Ashcroft*, 566 U.S. at 679. Mr. Taylor fails to sufficiently allege that the doctors committed any "specific wrongful acts." *Ettenson*, 2001-NMCA-003, ¶ 12.

Finally, as to the third element of civil conspiracy, Mr. Taylor fails to allege that he "was damaged as a result of" the doctors' actions. *Id.* Mr. Taylor does not connect the doctors' decision to release him from the hospital to any future or exacerbated injury. By the time Mr. Taylor was in the doctors' care, his alleged injuries had all already occurred. And as already noted, he alleges that the doctors treated him and saved his life. Doc. 109 at 6. Mr. Taylor fails to allege that he was injured by the doctors' conduct.

Mr. Taylor's accusations of a civil conspiracy are bare legal conclusions without factual support. *See Ashcroft*, 566 U.S. at 679. As such, Mr. Taylor fails to state a civil conspiracy claim.

12

**C.**      **Mr. Taylor fails to state a § 1983 claim against the doctors.**

Mr. Taylor makes multiple claims that the doctors violated his civil rights. Doc. 109 at 5–

7. Dr. Glenn and Dr. Kelly do not specifically address Mr. Taylor's § 1983 claims. *See* Doc. 201.

As Mr. Taylor's complaint is not a model of clarity and the claims plainly fail on their face, I do

not fault the doctors for not addressing the § 1983 claims. Instead, the doctors generally request

that the Court dismiss the complaint entirely. Doc. 201 at 6. I find that Mr. Taylor's § 1983

claims fail to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii)

("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails

to state a claim on which relief may be granted.").

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper proceeding for
> redress. . . .

42 U.S.C. § 1983. Section 1983 does not create any substantive rights, but merely provides the

mechanism for the enforcement of existing constitutional and federal statutory rights. *Nelson v.*

*Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002). To assert a claim under § 1983, a plaintiff must

establish (1) a violation of rights protected by the federal Constitution or created by a federal

statute or regulation, (2) that was proximately caused (3) by the conduct of a "person" (4) who

acted under color of any state statute, ordinance, regulation, custom, or usage. *Summum v. City of*

*Ogden*, 297 F.3d 995, 1000–01 (10th Cir. 2002).

The only people who can be sued under § 1983 "are those who represent the state in

some capacity, whether they act in accordance with their authority or misuse it." *Gallagher v.*

*Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (citation, brackets, and

quotations omitted). In *Gallagher*, the Tenth Circuit laid out four ways a private party can be

held liable under § 1983:

> In some instances, the Court has considered "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." [*Jackson v. Metropolitan Edison Co.*, 418 U.S. 345, 351 (1974)]. The Court has also inquired whether the state has "so far insinuated itself into a position of interdependence" with the private party, [*Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)], that there is a "symbiotic relationship" between them, [*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175 (1972)]. In addition, the Court has held that if a private party is "a willful participant in joint activity with the State or its agents," then state action is present. [*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966))]. Finally, the Court has ruled that a private entity that exercises "powers traditionally exclusively reserved to the State" is engaged in state action. [*Jackson*, 419 U.S. at 352].

*Id.*

Here, Mr. Taylor fails to state a § 1983 claim against the doctors because the doctors

were not acting under "color of any state statute, ordinance, regulation, custom, or usage." 42

U.S.C. § 1983. In other words, the doctors did not "represent the state in some capacity."

*Gallagher*, 49 F.3d at 1447. There is not a "sufficiently close nexus between the government"

and the doctors' treatment of the plaintiff such that the doctors' conduct "may be fairly treated as

that of the State itself." *Id.* at 1448 (quotation and citation omitted). The State has not "so far

insinuated itself into a position of interdependence" with the doctors that "it must be recognized

as a joint participant" in plaintiffs' medical treatment. *Id.* at 1451. Mr. Taylor has provided no

specific factual allegations to support a claim that the doctors and the officers worked in

"concert" together to deprive Mr. Taylor of his civil rights. *Id.* at 1453. Nor are there allegations

that the doctors were acting in a "function traditionally exclusively reserved to the State." *Id.* at

14

1456. As such, Mr. Taylor fails to allege that the doctors were acting under "color of any state statute, ordinance, regulation, custom, or usage." *See* 42 U.S.C. § 1983.

Mr. Taylor did not allege sufficient facts to support a § 1983 claim against the doctors.

## V.  Dismissal with Prejudice

It would be futile to give Mr. Taylor a third opportunity to amend his complaint so that he could state a claim against the doctors.

"Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (2002). It is obvious that Mr. Taylor cannot prevail on a claim against the doctors. His medical malpractice claims are time barred. His civil conspiracy claims do not, and could not, allege any underlying wrongful acts that are actionable. Mr. Taylor's § 1983 claims plainly fail as the doctors were not acting under color of law. Further, the case has been litigated for over four years, and Mr. Taylor has been provided discovery and a thorough *Martinez* report. He has had two opportunities to amend his complaint. Mr. Taylor has had ample opportunity to properly state a claim against the doctors, but he is unable to do so because he does not have facts that support an actionable claim against them. As such, dismissal with prejudice is warranted.

## VI.    Recommendation

Mr. Taylor asserts three causes of action against Dr. Glenn and Dr. Doan: medical malpractice, civil conspiracy, and deprivation of rights under § 1983. As discussed above, the medical malpractice claims are barred by the statute of limitations. *Supra* Section IV.A. Mr. Taylor fails to state a claim on which relief can be granted for both the civil conspiracy and

§ 1983 claims. *Supra* Sections IV.B–C. I therefore recommend that the Court grant Dr. Glenn's

and Dr. Doan's Motion to Dismiss (Doc. 201) dismissing all claims against them with prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. *Id.* In other words, if no objections are filed, no appellate review will be allowed.**

---

JENNIFER M. ROZZONI
United States Magistrate Judge